# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

CODY BREAUX                                        CIVIL ACTION NO.:

versus                                             SECTION: " " MAG.

MASTERMIND SHIPMANAGEMENT LTD,
GOLDPEAK SHIPPING CO. LTD,
NORTH OF ENGLAND P&I ASSOCIATION LTD; and
S/S MAESTRO EAGLE, *in rem*

## FIRST SUPPLEMENTAL AND AMENDING COMPLAINT

The Complaint of CODY BREAUX, an individual of the full age of majority who is domiciled in this district and State with respect represents as follows.

### I.

On or about October 29, 2014, Plaintiff, Cody Breaux filed his original Petition for Damages in the 34th Judicial District Court for St. Bernard Parish and said Petition was removed to this Court by Defendant, North of England P&I Association, Ltd based upon Diversity of Citizenship Jurisdiction on or about April 28, 2015.

### II.

This 1st Amended Complaint is brought under the General Maritime Law, 28 U.S.C. Section 1333, for those claims asserted *in rem* against the S/S MAESTRO EAGLE.  This Complaint is brought pursuant to Federal Question Jurisdiction, 28 USC Section 1331, more particularly 33

U.S.C. § 905(b); and in the next alternative, pursuant to diversity of citizenship, 28 U.S.C. §1332; and in the final alternative, pursuant to  the General Maritime Law, 28 U.S.C. §1333 — for those claims asserted *in personam* against the remaining defendants; in addition to this Court's ancillary and pendent jurisdiction for those claims arising under State Law.

III.

1)      MASTERMIND SHIPMANAGEMENT LTD., a foreign corporation doing business in this district and state, who was at all material times the shipmanagement of the S/S MAESTRO EAGLE.

2)      GOLDPEAK SHIPPING CO. LTD, a foreign corporation doing business in this district and state, who was at all material times the owner and/or operator of the S/S MAESTRO EAGLE.

3)      NORTH OF ENGLAND P&I ASSOCIATION LTD, foreign insurer, doing business in this district and state, who at all times material hereto was the liability

IV.

Defendant, the S/S MAESTRO EAGLE, *in rem*, is a vessel which at all material times was owned and operated by defendants. The vessel has been and upon information and belief shall in the future be present within this district during the pendency of this litigation.

V.

On or about October 14, 2014,  plaintiff suffered personal injury as a result of an accident caused by the negligence of defendants and/or the dangerous condition of defendants' vessel. While working for Triton Fumigation, L.L.C. as a fumigator/laborer, and attempting to obtain ingress and egress from one of the ship's cargo holds, a member of vessel's crew caused the cargo hatch to roll

2

over plaintiff's right hand – traumatically crushing and partially amputating same.

VI.

Plaintiff's accident and injuries were due solely to the negligence of the defendant and the dangerous conditions of the S/S MEASTRO EAGLE, her appurtenances, tackle and/or auxiliary vessels.

VII.

The above and forgoing were caused solely by the negligence of defendant or due to actions, conditions or things for which defendant is strictly or vicariously liable, including but not limited to violations of Louisiana Civil Code Articles 2315, 2316, 2317, and 2321, and United States Coast Guard Regulations, said statutory violations constituting negligence *per se* and voiding the defense of contributory negligence or comparative fault.  Defendant was guilty of the foregoing in the following but non-exclusive particulars:

a)      Because the vessel crew member operating the controls to open and close the hatch covers for the cargo holds did not ensure that the area around the hatch covers was "all clear" so that there would be no risk of injury to persons in the area around the hatch covers – before activating the controls to move the hatch covers any distance in either direction towards open or closed.

b)      By failing to ensure the existence and function of a program (including planning, strategy, policies, rules, recommendations, guidelines, protocol and procedures) for

3

proper **management** of the vessel's operation in general and during cargo operations to ensure for the safety of individuals, including any individuals such as petitioner, including, but not limited to the requirements that:

i)       "Lockout/Tagout procedures" be required relative to operation of the hatch cover controls and movement of the hatch covers;

ii)      Verbal/Oral Communication (either directly via voice, or via phone, radio, walkie-talkie, intercom, etc.) be required between members of the vessel crew operating hatch cover controls and movement of the hatch covers, and all persons aboard the ship, including any individuals such as petitioner, who might be in the area of a hatch cover to confirm "all clear" status (that no one is in a position to be exposed to moving machinery, equipment hatch covers, etc.) before activating the controls to move the hatch covers any distance in either direction towards opened or closed;

iii)     Communications equipment (i.e. phone, radio, walkie-talkie, intercom, etc.) mandatorily must be present, available and operational (whether provided by the vessel or any invitees allowed aboard) for use between members of the vessel crew operating hatch cover controls and movement of the hatch covers, and all persons aboard the ship, including any individuals such as petitioner and his supervisor and crew, who might be in the area of a hatch

cover;

iv)   The vessel have one or more members of the crew on board, present, available, and on duty that is fluent in the English Language to communicate between members of the vessel crew operating hatch cover controls and movement of the hatch covers, and all persons aboard the ship, including any individuals such as petitioner and his supervisor and crew, who might be in the area of a hatch cover;

v)   A visual inspection be required of the hatch areas to confirm "all clear" status (that no one is in a position to be exposed to moving machinery, equipment hatch covers, etc.) before activating the controls to move the hatch covers any distance in either direction towards opened or closed;

c)   By failing to ensure that adequate **training** of defendant's employees, agents, heirs and assigns was conducted concerning said program of management, and all relevant policies, rules, recommendations, guidelines, protocol and procedures for the vessel's operation in general and during cargo operations to ensure for the safety of individuals, including any individuals such as petitioner, including, but not limited to the requirements set forth *supra* in § b);

d)   By failing to ensure adequate **supervision** of defendants' employees, agents, heirs and assigns **and enforcement** said program of management, and all relevant policies,

5

rules, recommendations, guidelines, protocol and procedures for the vessel's operation in general and during cargo operations to ensure for the safety of individuals, including any individuals such as petitioner, including, but not limited to the requirements set forth supra in § b);

e)      By failing to act with reasonable vigilance;

f)      By failing to keep a proper lookout and failing to see what defendant should have seen;

g)      By Defendant's failure to warn;

h)      By creating a sudden emergency;

i)      By failing to exercise defendant's last clear chance to avoid the accident; and

j)      Through any other respects which may be discovered prior to and proven upon trial of this matter.

## VIII.

Defendant's misconduct was willful, wanton, arbitrary and capricious and done with callous disregard for plaintiff's rights and safety thereby entitling plaintiff to an award of general punitive damages.

## IX.

As a result of the foregoing, plaintiff is entitled to and prays for trial by jury on all claims triable by jury, and that the Court allow the jury's findings to serve as a basis for the Court's findings on the bench trial claims argument the vessel, *in rem* and damages in an amount found to be

reasonable or justifiable within the premises, including punitive damages, attorney's fees, all costs of these proceedings, legal interest, and any and all other legal, general or equitable relief to which they may be entitled.

X.

By reason of the foregoing, plaintiff was caused to sustain severe, painful and permanent injuries to his mind and body and is incapacitated from performing gainful employment, all resulting in suffering the following elements of damages: (a) past lost wages; (b) impairment of earning capacity and resultant lost future income; (c) medical expenses, past, present and future; (d) physical pain and suffering, past present and future; (e) mental pain and suffering, past present and future; (f) residual physical disability and impairment of function; (g) disfigurement, embarrassment and humiliation; (h) PTSD and psychological damages; and (i) loss of enjoyment of life.

XI.

Plaintiff estimates that the damages outlined above will exceed $2,000,000.00.

**WHEREFORE,** plaintiff, CODY BREAUX, prays that defendants, MAESTRO SHIPPING, SA, MASTERMIND SHIPMANAGEMENT AND GOLDPEAK SHIPPING and the S/S MAESTRO EAGLE, *in rem*, be duly cited, served, and caused to appear and answer, and after due proceedings be had, judgment issue herein in favor of plaintiff and against defendants, all jointly, severally and *in solido* in the sum of $2,000,000.00, together with legal interest, all costs of these proceedings, and any and all other general, legal or equitable relief to which he may be entitled.

7

RESPECTFULLY SUBMITTED,

  /s/Richard H. Barker, IV
RICHARD HOBBS BARKER, IV., ESQ. (16798)
228 St. Charles Ave, Suite 501
New Orleans, Louisiana 70130
Telephone: (504) 581.7050 *1
Facsimile:  (504) 581-7051
Email: Barkerlaws@aol.com

8